review to apply those burdens retroactively. Over the last two decades, there have been two major developments. First of all, states have imposed restriction after restriction on registrants so that we now see what scholars call super-registration statutes that look nothing like the first-generation registration statutes that were at issue in the Supreme Court's decision in Smith. The second major development is that the research has come in, and that research has eviscerated the assumptions on which those laws are based. Low-risk offenders post less risk of committing a sex offense than the baseline for out-of-the-blue offenses, and recidivism rates of even high-risk offenders drop dramatically over time. Registration and exclusion zones, the research shows, don't protect the public and, in fact, are often counterproductive. That research is contained in the record and in the joint statement of facts. Isn't that something to take up with the legislature in terms of the purpose for enacting the statute and its regulatory scheme? The ex post facto clause is designed to protect unpopular groups from vindictive legislation, and so it is not simply a rational basis test. It is a multi-factor test, and one of the significant factors, the most significant factor, really is the excessiveness factor. Right. That's one of the factors, as you admit, but there are several others, and you're not arguing that none of those purposes are met, are you, by the statute? I think, I'm not sure I understand the question. You're asking whether, the legislative, so a valid legislative purpose is to protect public safety. The record here shows that that is not the case, and the ex post facto clause What do you mean the record shows that that is not the case, that it's not the purpose, or it's not the effect? It is not the effect. Lifetime registration does not have the effect that the legislature has avowed for this statute, and under the ex post facto clause, we have this multi-factor test, so it doesn't look at, you know, just what did the legislature intend, but it looks at what, you know, how severe are the burdens. Are those burdens excessive in relation to the legislative purpose? Is that rational? As we've set out in our briefs, in fact, that purpose, the research shows that that purpose, assuming it's the purpose, has not been met, but even if, you've got this, you have to look at the excessiveness factor, and this is a statute that affects every aspect of people's lives. I'd like to talk a little bit about Smith versus Sora, and give a comparison of those two statutes. So in Smith, this is the case before the Supreme Court, yes, the Alaska case that was before the Supreme Court. That was a first generation registration statute, not a super registration statute. So in Smith, the Supreme Court said, there is no evidence here of substantial harm. Here we have a record that is replete with evidence of the harm that our plaintiffs have suffered as a consequence of being on the registry. In Smith, the court says, registration only has minor and indirect consequences. That is not the case here. There are severe consequences from registration. See, that case was five to four? That case was... Alaska case? That case, I believe, was six... I had five or six opinions, but in the terms of yes or no, it was... I believe it was six to three with a concurrence that was quite concerned about it. That was a close decision on a statute that looks nothing like the statute we have today. Here you've got a lot more, people can't go here and go there, and they have to stay in this place. I mean, I would guess liberty is much more affected in this case than in that. Absolutely. So in Smith, the court said, people are free to live where they want. That is not true here. In Smith, the court said, well, it's sort of like probation and parole, but there's not in-person reporting. So we're not going to say it's a traditional form of In Smith, there was no immediate reporting requirement. We have to show up within three days. Here you've got immediate reporting for all sorts of different things, like creating a new email address. In Smith, the court says there's no evidence that simply having a conviction wouldn't have the same result. Here the record unequivocally shows that individuals would get jobs despite having a conviction, and then they would get fired when an employer found out that they were on the registry. Or the record shows that, for example, Doe No. 4 could not live with his wife and children because of SOAR. So these are harms that are attributable to SOAR, so that's not like Smith. The statute in Smith did not have limitations on free speech. Here we have limitations through the internet reporting requirement. In Smith, the court said there's no assertion of dangerousness. What we have here is that the state labels individuals as Tier 3 registrants. It creates categories of registrants. It says you're Category 1, you're Tier 1, you're Tier 2, you're Tier 3. It labels the degree of dangerousness. It labels the degree of dangerousness. In Smith, the court said all the statute is doing is reporting on convictions. That's not the case here. The state is picking out a group of people and saying, not only are these dangerous sex offenders, these are the most dangerous. Our clients, respectfully, are not dangerous. They are certainly not the most dangerous. They are not dangerous at all. In Smith, there were no limitations on parenting. As we discussed when we were here before, there are severe restrictions. Individuals cannot go to their children's graduations. They cannot go to their children's plays. Do you have a reason besides all of the constraints, the new constraints or the additional constraints over those in the Alaska case, anything in addition to those constraints which affect the liberty of the individual that would make it punitive? Are these constraints that you're itemizing here the basic and the only real reason for saying that it's punitive? The test is a multi-factor test. That goes to the first factor, the extent of their disabilities and restraints. The other factors, I think, are also important here because if you look, for example, at the last two factors, which are is this rational and is it excessive in relation to a non-punitive purpose, what we have, which we didn't have in Smith, is first case, but also research that shows that the Supreme Court's assumptions about sex offenders are not true, and I refer you to the Ellman article that's attached to the briefing in the prior case, but also research that shows that... What specifically are you referring to where the Supreme Court has gotten off base on the data, for example? Right, so the Supreme Court, there's an excellent article by Ellman that talks about the way the Supreme Court has essentially assumed that sex offenders have high recidivism rates. The record in this case, and that's the record that this court has to rely on, shows that that is simply not true. There are different levels of risk, but even the high-risk people drop off dramatically over time, so there's no reason for a lifetime registration. Was that data, that research, available at the time that the Supreme Court handed the Smith case down? I don't know if all of that was available, but as Ellman points out, the research that the Supreme Court was relying on was not actual research. It was simply opinions that were out there, and I think the ex post facto... and assumptions about people who commit sex offenses. And what we now have is the research that shows that that isn't true. It shows that, in fact, registries can increase recidivism rates, and that these zones that are being created on destabilized individuals are counter to public policy. So as a matter of public policy, these are bad, but that's not before this court. The question before this court is, are these excessive in relation to this avowed non-punitive purpose, and it's... The bottom line is, is this criminal, basically, restraining criminal activity, or criminal in nature, right? I'm sorry, I'm not understanding the question. The bottom line question is whether it's punitive in nature or not, right? Yes, the question is, is this punishment? If it's punishment, it's clearly retroactive, and therefore it violates the ex post facto clause. We're not saying that Michigan couldn't identify those individuals who are dangerous and impose restrictions on them and require monitoring, but to base that purely on a prior conviction, a conviction that may be decades old, a conviction that, in some of these cases, is not even for a sex offense, a conviction that may not even be a conviction because a person's case was dismissed, to go back and do that, that is punishment and violates the ex post facto clause. I see that my time for this round is up. Thank you. Good afternoon. May it please the Court. Eric Grill with Michigan Department of Attorney General on behalf of the appellees. I just wanted to begin by addressing one point from counsel's argument. There was a reference to the immediate in-person reporting and how that was an added burden to the registrants. That was ruled unconstitutional at the lower court, and that was not appealed by the state in this case. So, as a consequence, it is not part of the statute that is really being applied, or it ought not to be a burden that is going to determine the outcome of this case or this appeal. Well, I want to ask you, picking up on where counsel left off, why isn't this regulatory scheme punitive? I'm assuming you're saying that it's not. I absolutely am saying it's not. So, why is it not punitive? Well, I'll begin by looking at the standard that the Supreme Court has set out, the intense effects structure. First, of course, is that the intent is very clearly not punitive. It's stated directly in the language of the statute that this is a civil regulation. It is not intended to be criminal. Do we look just at intent, or do we look at intent and impact? Well, the effects are the second part of the prong. So, looking at the effects of the case, first of all, what is the disability or restraint that the registrants are being placed upon? The only thing that the statute or the amendments that drew this constitutional challenge were not to the statute as a whole, or at least not the way I understand it. It was brought about through amendments that did very limited things. All it did was extend the time for registration for some registrants, broke them up into tiers, added the requirement to register email addresses and internet identifiers. Counsel, there are so many things here that restrain a person's liberty. They can't go here, can't go there, in some cases can't live with the rest of their family at a particular location. I mean, it's a massive change in the liberty that people have to come and go and live their lives. Well, I'm glad you brought that up, Your Honor, because, again, the things that talk about where they can live, where they can work and that kind of a thing are only limited to the student safety zone portion of the statute. That is currently part of the other appeal that we argued two months ago, and the argument there was that the lower court had ruled that and they're impossible to measure and so they can't be applied properly. Now, should the court, and that matter is still up in the air, but if the court decides that the lower court was correct, that that's vague, then there's really no need to reach the idea of whether or not those constitute ex post facto punishment. But if we don't, it's the question of chicken and the egg. If we decide that this is ex post facto, then I take it the other case goes away, right? Well, I don't know about going away. I guess it would depend on, I guess, the order that the court wants to take it. You're saying if we decide the other case first, this case goes away. I'm just saying also, isn't the obverse, the reverse of that true, that if we decide this case that it is punitive, then the other case goes away? Well, I think I would suggest to the court that if I was going to pick the order it would mind you, my position is still that it's not vague. But if I'm going to pick the order, I would say that start with vagueness, because if it's a vagueness problem, a lot of the burden that the plaintiffs, and I always keep saying plaintiffs, that the appellants describe here goes to their problems of defining the zones. We have to have this extra large zone because you don't know exactly how far away from the school we need to be, and so it excludes more places and more things that we can't do. So, I would point to the court that right now there is already a bill in front of the Senate, Senate Bill 581, which addresses, almost point for point, the exact things that the lower court told it to address. The measurement of the zones, and specifically... Judge Cleland's opinion. Judge Cleland's opinion. But the things that are addressed in Senate Bill 581, which has been approved by the Senate, and it's currently in committee in the State House, and it deals also with the student safety zones as far as the loitering provisions. And it talks about, well, it's not just for no apparent purpose now, now we're talking about you have to have intentionally entered into school property and chosen to stay there. If you work, if you have a job that brings you into school property, you can do that, only now you wouldn't be able to engage with a minor or interact with them, or continue to do so if they interacted with you. If you're a parent, you could go to the school and go see their plays, watch their games, talk to the teacher, do those things, but you couldn't just wander in there for no reason. So, the bill before the State House right now goes a long way toward addressing a lot of the ambiguities and the problems that are addressed in the vagueness, and which underscore the burden that they describe as far as why that is so punitive, I guess for lack of a better word. So, in that respect, I would say that... You used the word that if it is true, answers the question on ex post facto. And again, my position is not punitive, but I was trying to describe by reference to the zones that we can't travel to. Well, that's a specific part of the statute that if the court determines it's vague, then we don't need to address it for ex post facto. We have a better version of the statute potentially on its way that would create a better place to make a basis to judge whether it's an ex post facto type of situation. The council encouraged us to look at these, not just seriatim, but to look at the accumulative nature, not just the safety zones, the restrictions on work, the internet restrictions, reporting a new email address or whatever every three days, the tiering, which she says establishes hierarchies of dangerousness, the lack of support, or not lack of support, but the data that assumes and presumes dangerousness that's not justified, and the ability or the inability in some cases to reside with one's family. Punitively, why doesn't that make this punitive? A couple things. First, as it regards the three day thing, that again is the immediate in-person reporting, which is out of the law at this point, so it's not really something that is a burden to anyone. As it concerns the internet registration, again, there's no restriction on what they can view, where they can go, how they can interact, who they can talk to. The Sex Offender Registration Act does nothing to restrict anyone's ability to access, interact with, or do anything on the internet. The only thing they have to do is if they open up an account, if they start a new email address, if they open up a new identity online with which they interact with people, they have to report it. Every day? No. That's the immediate in-person reporting requirement. They report it at some point in time? They do. They report it the same as they would report everything else, their cars, their telephone, their home, but it's just reporting. There's not an idea that says, well, you also have to give us a list of everything you've said. All you're telling us is the identity, and that's a useful tool for law enforcement with the idea that when they're investigating a crime, they've got a child that has disappeared, they've got their chat history, they know they were talking to this chat identity, and then they can search that chat identity and see if that is a registered offender. Is it still on the internet that this person is a danger to the community? No, Your Honor, and that's something I take great issue with, and it's been a long source of controversy between counsel and myself. All the tiers are, they say tier. Tier 1, Tier 2, Tier 3. There's not an expression here of Tier 3, extra bad, danger, watch out. It just says Tier 3. So without some further judgment or determination by the individual looking at the registration page, there's nothing there to say. Tier 3 is the worst of the worst, bad person. All it says is Tier 3, and that is a determination basically for organization structure to say that the Tier 1s, they go away after a certain number of years. The Tier 3s have lifetime registration requirements, and that's really the extent of the influence Tier has on anyone. It doesn't set them up for extra special registration duties. There's no, if you are a Tier 3, you have to report this extra additional information. It's just about how long you report. What does it say on Tier 1 that's different from Tier 3? I'm sorry? What does it say on Tier 1 that is different from Tier 3? From the standpoint of an offender's page? On the registry, yes. Nothing. It says Tier 1, and it says Tier 3. And there's no reference to danger or anything on any of the tiers? On the offender's page? No, I don't, there's nothing. What about on the registry itself? I mean, isn't there some overarching thing? The statute itself, in the description of, well, these are the Tier 1s, these are Tier 2, and these are Tier 3, it's broken up by the offense. And so you could say, well, these are the offense that gets you the Tier 3 lifetime registration. This idea of danger is not anywhere communicated, you're saying? Not on the offender's website. It's not that this is an extra dangerous person. This is just Tier 3. Is it communicated any other place? I'm sorry? Is it communicated any other place that the person is dangerous, dangerous to the community? I think what you would have to do is say that the person is going to go to the SORA, read the statute, look at the list of offenses and determine that those are the most dangerous offenses, and so that means Tier 3 is the most dangerous. You mean there's nothing publicly available that says what is a Tier 1 offender, what is a Tier 2 offender? And I think there... And at this point, Your Honor, it's been a while since I've looked at... Let me put it a little differently, which would require anybody looking at this to make an inference, but is it published somewhere what the reporting requirements are for Tier 1 as opposed to Tier 2 as opposed to Tier 3? Because if it's clear that Tier 3 people have to report forever, even the most naive reader is going to figure out, wait a minute, these are bad guys. I know the statute obviously incorporates it, Your Honor, and that's publicly available. At this time, I do not know whether or not the Michigan Sex Offender Registry website has, as a frequently asked question or as an informational point, these are the tiers and this is how they're broken up. But again, all it would really identify is these are the offenses they were convicted of, this is how long they have to register, and that's not a matter of drawing a target on someone saying this is an extra bad person, this is a statement of fact. Let me ask another question that's related to it, and that is that the way these tiers are constructed, they are based entirely on the actual conviction, is that correct? That's correct. So there is no individualized determination as to any of these offenders? Correct, and I think that would actually present more problems. We get into a weird point there of gazing into someone's soul and trying to decide this is a bad person, this is a good person, and that has defied law enforcement forever. Well, it probably doesn't take a lot of soul-gazing to look at somebody who committed an offense that had no sexual component to it whatsoever, but for reasons known to the legislature, it still puts them in a Tier 3 situation. This would be like John Doe No. 1 with the kidnapping charge. Yes. John Doe No. 1 presents a challenging case, but I would respond in this way, that kidnapping itself is obviously not far removed from a sex offense. Many times the offenses involving minors have a kidnapping component to it. If you're going to molest a child, generally there is a taking them away to some remote place first. So it's not a complete stretch to say that's how kidnapping gets on the list. John Doe No. 1 didn't have a sexual component to his crime, but he did have a kidnapping charge. I can draw criticism about his lawyer's ability, why he allowed him to plead to that offense. I can draw criticism for the prosecutor and the charging choice. The fact remains that we're not making a determination that John Doe No. 1 is the type of person or he's a bad person. All we can really say for sure is what John Doe No. 1 did. He kidnapped. And so that's what got him on the registry. But people in the position of John Doe No. 1, and I would have to say I'm skeptical that there's only one John Doe No. 1 in the state of Michigan. So people in that position have no recourse. They have no ability to ever get off of that registry. Is that right? Of the lifetime requirement. A Tier 3 offender, there is no way for them to be removed. It's an interesting hypothetical I hadn't considered, and I'm not sure right now what the impact would be of a gubernatorial pardon, whether or not that would negate the need to register. My inclination would be that probably not, but I would have to do more research. I was going to say, based on the way the rest of it works, I would say not. That would be my guess. But again, looking at it from the standpoint of every offense, there could always be someone to say, well, yeah, I did this, but there was this extenuating circumstance that excused it or forgave it. That's the part of the problem with trying to make an individualized determination, is it becomes less a matter of objective fact and becomes more a matter of subjective opinion. A large part of the type of analysis or individualized assessment that counsel suggests that we do is inherently subjective. One person, well, he's a good kid from a good family, and so we're going to let him go, is another person looking at the same person saying, well, I don't know, he's a really dangerous offender, he did a bad thing, and I see no remorse. When we get into that type of individualized assessment, we're opening the door to not an objective statement of fact. We're opening the door to a much more problematic type of analysis. I don't even know what type of standards we could apply to say this person is a sex offender, this person is not, other than what they've actually done. In particular, these particular John Doe's and Mary Doe's, with the exception of John Doe number one, every one of them had sex with a minor, and they can explain why. Every one of them is a criminal offense, right? Correct, Your Honor. So, I mean, it's clearly related to criminal offenses, and it's doing something in response to criminal offenses. The registration is? Yes. Yes. And the other factors that are connected to it, it's all an outgrowth of and a rise from a criminal offense. Correct. And I see that I'm out of time. Thank you, Your Honor. Thank you. Thank you. Most states are making the many state cases that we cited, you know, this sort of new wave of cases finding their ex post facto violations. A couple things are important about those. First of all, many of those state courts first found, you know, that their statutes were constitutional and then said, looking at what has happened since then, how onerous they've become, they've crossed the line. It's gone too far. And most of those cases don't even involve a statute as extreme as Michigan's. Most of those cases do not involve residency and loitering and work restrictions. Are these state Supreme Court cases and the Federal Court of Appeals cases that you're referring to? These are primarily state cases. They're primarily state cases. There was one case out of the Ninth Circuit that was vacated, though, as moot by the U.S. Supreme Court. I think the Supreme Court is interested in this issue, took it, but then there was a mootness issue. How many state Supreme Court cases are there that are saying that this is ex post facto? I believe we cite eight cases in our brief. I think one of those may be an intermediate court. I can't recall offhand. But there's this wave of cases because, and these are states that previously said the statute was fine and then have looked at the changes, not even work and loitering and residency, but looked at in-person recording, looked at lifetime registration, looked at all of these other burdens and said that's gone too far. I want to address your question about the relationship between vagueness and the ex post facto issue. If this court rules for the plaintiffs on ex post facto, that does not resolve the vagueness issue. And the reason for that is that that is a facial challenge, and the Supreme Court in the Johnson case said that when there's a challenge on a criminal law, vague criminal law, that that needs to be facially addressed. There are registrants today who are going to be faced with that same vagueness problem, right, who are convicted today, put on the registry today, who would not be affected by the ex post facto ruling but are going to face that same issue. So I believe the court has to address that as well. I'm quite following that. You're making a distinction here. If this court says that the Michigan statute is punitive and therefore is an ex post facto law, it seems to me that would take down with it the provisions of the law that are also vague. Well, what it would do is for the individuals who were previously convicted, the statute could not be applied retroactively to those individuals. It could still be applied prospectively because the state can prospectively punish. The state could say we're going to impose these restrictions as punishment on people in the future, but what the state can't do under the ex post facto clause is go back and increase the punishment for a prior offense. And so the vagueness issues remain for individuals who were convicted after 2011 or basically who are convicted into the future, right? So the vagueness issue remains for those individuals because the state can punish those individuals. Well, it would be, I guess, it would be from the time in the future after a court has finally decided that it's an ex post facto law. After that, you could have the issue arise again as to vagueness, right? The individuals who would benefit from an ex post facto ruling would be individuals who were put on the registry prior to the legislative changes that have made the statute so punitive, right? So individuals, I would say, probably from 2000 and, you know, it depends. And I think one of the, what this court needs to decide is really that there needs to be individualized for those individuals going backward. What you're asking us to do is to decide what in the future would be void for vagueness because if it is an ex post facto law, that takes the statute down. It declares it to be now invalid but doesn't say anything about what in the future might or might not be void for vagueness or ex post facto, I guess. If a new statute is adopted, then it will raise its own problems. We'll have to decide that then. That's my only question. Let me ask it in a slightly different way if I could. If we were to decide that the ex post facto challenge here is meritorious, that gets rid of all of these plaintiffs who have raised that question. And if that is so, who is before us as to whom we could decide a vagueness challenge? I think that's a very good question and I would point, I would point the court to the U.S. Supreme Court's recent decision in Johnson about how courts should address facial challenges because the challenges, facial challenges to vague criminal laws because the court says when there's a facial challenge, it should be addressed facially and I think that would apply here, not to all of the claims. Certainly, if the court agrees with the plaintiffs on ex post facto, many of the claims would not need to be reached, but I think the facial ones may need to be reached and that would be the vagueness issues. What I'm worrying about is, I mean, I hear you, I understand what you're saying, but for every single one of the plaintiffs that we have in front of us, if we say this law runs afoul of the ex post facto clause, then any other reason that we would say this law can't be applied, whether we're looking at it facially or as applied, is really kind of dicta, is it not? Because we're getting rid of it on the basis of ex post facto. You, again, I think that one of the, I would ask the court to look at that particular case and see what the Johnson case that I mentioned, we would certainly be very pleased with the ruling from this court finding that this is an ex post facto. What are you worried about? In reality, why are you concerned about this? My concern is that the ex post facto ruling would benefit individuals who have been placed on the registry in the past, but the statute would survive prospectively for individuals in the future, and so then we have the same vagueness problems when we're back here again. But we would be dealing with it in a way that wasn't dicta, because it would mean something with regard to however we ruled. I would say as a practical matter, my understanding is that the legislature has been waiting for a decision from this court in terms of making some decisions about how to frame a constitutional statute, so I believe it would certainly be helpful to this court. I think the court can and should address it, but if the court chooses only to address the ex post facto issues in the plaintiff's favor, we would certainly be. We just don't like to decide things we don't have to decide. We've got enough things to decide we do have to decide. This case certainly raises many issues, and that would be a way to address what is really the core of this case. I see my time is up. If the panel has other questions, I'm happy to answer them. I think we do not. Thank you, Your Honor. Thank you very much, counsel. There being nothing further at the moment, you may adjourn the court.